## Commonwealth v. Jenkins

*David W. Skutnik, assistant district attorney,* for the Commonwealth.
*Jeffrey J. Kash,* for defendant.

O'BRIEN, *J.,* February 24, 1993—

## I. FINDINGS OF FACT

(1) On October 5, 1992, Inspector Thomas Kochman, a United States Postal Inspector assigned to the Harrisburg, Pennsylvania office, was contacted by Inspector Keith Salter of the Postal Inspection Service, Philadelphia Division, and advised that an anonymous tip had been received regarding an "Express Mail" parcel alleging that it contained controlled substances.

(2) The parcel was described to Inspector Kochman as being a rectangular box, "Express Mail" number GB038072551, weighing approximately 30 pounds, arriving from Tucson, Arizona to be delivered to a Glenn Jenkins, P.O. Box 492, Canadensis, Pennsylvania 18325.

(3) On October 6, 1992, a mail watch for incoming "Express Mail" parcels was established at the Canaden-

sis Post Office and at the Lehigh Valley General Mail Facility located in Lehigh Valley, Pennsylvania.

(4) At approximately 10:30 a.m. on October 6, 1992, Lehigh Valley Express Mail Clerk, Connie Stern, reported to Inspector Kochman that "Express Mail" package number GB038072551, weighing 30 pounds and 10 ounces, addressed to Glenn Jenkins, P.O. Box 492, Canadensis, Pennsylvania 18325 had arrived for delivery.

(5) The return address on the package was Mark Bond, 3052 N. Edith Blvd., Tucson, AZ. The building at this address was determined to be vacant and the previous occupant's name was not Mark Bond.

(6) A review of the postal records at the Canadensis Post Office disclosed that Post Office Box 492, Canadensis, Pennsylvania was rented to a Glenn Jenkins.

(7) At approximately 1 p.m. on October 6, 1992, Inspector Kochman took possession of the package from the General Mail Facility in Lehigh Valley. Inspector Kochman noted that the package met many of the characteristics of a "narcotic package profile" including:

(i) the point of origin was a known area for drugs

(ii) the package was heavily taped

(iii) the package emitted a strong odor of glue

(iv) the high cost of postage for a 30 pound personal "Express Mail" package.

Inspector Kochman then transported the package to the State Police Academy located in Hershey, Pennsylvania.

(8) Inspector Kochman arrived at the Academy at approximately 2:45 p.m. on October 6, 1992 and met with Corporal Charles McCreary of the Pennsylvania State Police and his trained narcotic detector dog, "Baron." Following a controlled test, the narcotic de-

tector dog, Baron, indicated that the package contained contraband.

(9) Inspector Kochman returned to his Harrisburg office at approximately 4 p.m. on October 6, 1992 and turned the package over to Inspector Brian D. Schellhase who prepared an application for a search warrant and supporting affidavit.

(10) The search warrant was prepared by 5:30 p.m. on October 6, 1992 and a United States Magistrate, Paul R. Kramer, of Stroudsburg, Pennsylvania was contacted so that a search warrant might be issued. Due to the time involved in reaching Stroudsburg from Harrisburg, the magistrate advised Inspector Schellhase that he would be available on October 7, 1992 to issue a search warrant. The package was then stored in the evidence room overnight.

(11) At 9:30 a.m. on October 7, 1992, the magistrate determined that there was sufficient probable cause and issued a search warrant. Inspector Schellhase then transported the package to the state police barracks in Swiftwater, Pennsylvania where the package was searched.

(12) The search revealed 11 pounds of a substance determined to be marijuana hidden inside two mailboxes which were sealed and bolted shut. The package was then resealed.

(13) The package was delivered to the Canadensis Post Office by Inspector Schellhase at approximately 11 a.m. on October 7, 1992. The package had been guaranteed by the Postal Service to be delivered by 3 p.m. on October 7, 1992.

(14) At approximately 4:45 p.m. on October 7, 1992, Glenn Jenkins arrived at the Canadensis Post Office and requested his package. The package was delivered to Mr. Jenkins who was then arrested.

## II. DISCUSSION

Defendant's omnibus motion seeks to suppress the introduction of the alleged marijuana because the "Express Mail" package was detained for an unreasonable amount of time before a search warrant was issued. Defendant alleges that this detention violated his rights guaranteed under the Fourth and Fourteenth Amendments of the Constitution of the United States as well as Article 1 Section 8 of the Constitution of the Commonwealth of Pennsylvania. Our analysis concerns defendant's right to be secure from an unreasonable seizure of his "papers and effects" under the Federal Constitution and "papers and possessions" under the State Constitution. See U.S. Const. amend. IV; Pa. Const. Art. 1, section 8.

Inasmuch as Pennsylvania has not addressed the issue of postal detention, we must examine how our federal courts have handled this issue. It is well established that, "first class mail such as letters and sealed packages subject to letter postage—as distinguished from newspapers, magazines, pamphlets, and other printed matter —is free from inspection by postal authorities, except in the manner provided in the Fourth Amendment" *U.S. v. Van Leeuwen,* 397 U.S. 249, 251 (1970).

In *Van Leeuwen,* two packages of suspicious character were detained for 29 hours until a search warrant could be issued. The court stated that the significant Fourth Amendment interest was in the privacy of the contents of the packages, not in their detention and this privacy was not invaded prior to the issuance of a search warrant. Mr. Justice Douglas, writing for a unanimous Supreme Court, concluded that the 29 hour delay was not unreasonable within the meaning of the Fourth Amendment.

In *U.S. v. Lux,* 905 F.2d 1379 (10th Cir. 1990), the detention of an "Express Mail" package for a day and a half was not unreasonable where the package met three of the factors described in a "drug package profile" and two drug detection dogs signalled that the package contained a controlled substance. In *U.S. v. Aldaz,* 921 F.2d 227 (9th Cir. 1990), *cert. denied,* 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991), a three day detention was not unreasonable given the difficulty in travelling across Alaska. While the length of the detention is a factor in determining reasonableness, it has been stated that the, "time of detention is not necessarily synonymous with, or even a reliable proxy for, intrusiveness of detention. Where inanimate objects are concerned, detention is merely the period during which government agents exercise dominion and control over the property . . . [T]hough the duration of a detention is an important consideration in evaluating the intrusiveness of a package's determent, it is neither the mirror image of unreasonableness nor the yardstick which the suitability of police procedures must inevitably be measured." *U.S. v. LaFrance,* 879 F.2d 1, 6 (1st Cir. 1989).

The rubric is not the length of the delay but rather the reasonableness of the detention.

Given the particular circumstances in the case at bar, we find that a 23 hour detention of an "Express Mail" package was within the bounds of reasonableness under both the Federal and State Constitutions. These circumstances included: the matching of six characteristics on the "narcotic package profile" including intelligence from another Postal Inspection Division and a fictitious return address; the distance and time involved in travelling from Harrisburg to Lehigh Valley to Hershey to Stroudsburg; the positive reaction of a drug detection dog; and the lateness of the hour when contacting the

appropriate magistrate. Most significant is the fact that the package was delivered to Canadensis roughly four hours before it was guaranteed to arrive.

## III. CONCLUSIONS OF LAW

(1) The delay between the mailing of the package to the defendant and the service and issuance of a search warrant to inspect it was not unreasonable within the meaning of the United States Constitution or the Pennsylvania Constitution.

(2) The detention of the package under the circumstances in the case at bar did not constitute a seizure without probable cause.

## ORDER

And now, February 24, 1993, defendant's amended omnibus pre-trial motion in the nature of a motion to suppress is denied.